# ' Stoner *v.* Wunderlich.

*Will—Executory interest—Issue—Life estate—Limitation over.*

When a limitation over is to take effect, not on an indefinite failure of issue of the prior taker, but on a failure of children only, or on a failure of issue within a given time, then the limitation over will not raise an estate tail by implication in the prior taker, but he will have a life estate with a limitation over of a springing interest or a fee with a conditional limitation over as the case may be.

A limitation over by will to survivors or persons in being, after the death of the first taker without issue, raises a strong presumption that the testator did not contemplate an indefinite failure of issue.

The nature of a devise over has always been looked at to ascertain whether a definite or an indefinite failure of issue was intended, as where ulterior devises confer estates for life only, or when they are only to take effect in case the devisee then be living.

*Will—Devise—Limitation over—Death in lifetime of testator.*

The rule that a bequest over in the event of the death of the previous taker refers to that event occurring in the lifetime of the testator, is not applied where the first taker is referred to or treated as living at a period subsequent to the death of the testator.

Testator directed as follows: "Lot No. 2 I give and devise to my son Frederick. He to pay to his mother during her natural life $60.00 per annum . . . . and if the said Frederick die without issue, and his wife survives him, she shall have the use of the said lot No. 2 with the appurtenances during her natural life, and at her death the said property shall revert to all my surviving heirs." *Held,* (1) that as the limitation over was for Frederick's wife for life, the testator contemplated a definite failure of issue before her death; (2) that the testator contemplated that his son would survive him; (3) that Frederick took an estate in fee determinable on his death without issue, in which event the ulterior estates would take effect as executory devises. Hoover v. Krick, 1 Walker, 117, followed.

Argued Oct. 24, 1900. Appeal, 101, Oct. T., 1900, by defendant, from order of C. P. No. 1, Allegheny Co., March T., 1900, No. 559, making absolute a rule for judgment for want of a sufficient affidavit of defense in case of Frederick Stoner v. Mary J. Wunderlich. Before McCOLLUM, C. J., MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Rule for judgment for want of a sufficient affidavit of defense.

The court made absolute the rule for judgment for want of a sufficient affidavit of defense.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was the order of the court.

*C. E. McConkey*, for appellant.—Where a fee is given in the first part of the will, it may be restrained by subsequent words so as to convert it into a life estate: Urich's App., 86 Pa. 386.

The testator meant a definite failure of issue: Taylor v. Taylor, 63 Pa. 486; Nes v. Ramsay, 155 Pa. 628; Gernet v. Lynn, 31 Pa. 98.

It is manifest from the examination of this will that when the testator used the word "issue" he intended children of his son Frederick: Leightner v. Leightner, 87 Pa. 144; Parkhurst v. Harrower, 142 Pa. 432; Hill v. Hill, 74 Pa. 173; Taylor v. Taylor, 63 Pa. 486; Hoge v. Hoge, 1 S. & R. 148; Gormley's Est., 154 Pa. 378; Miller's Est., 145 Pa. 561; Richle's App., 54 Pa. 97; Snyder's App., 95 Pa. 174; Seibert v. Butz, 9 Watts, 490.

A limitation over by will to survivors or persons in being after the death of the first taker, raises a strong presumption that testator did not contemplate an indefinite failure of issue: Steinmetz's Est., 194 Pa. 611; Johnson v. Currin, 10 Pa. 498; Mifflin v. Neal, 6 S. & R. 460.

In this particular case on the death of the first devisee without issue and decease of his wife, the property is to vest in those who belong to the same class as the devisee and who are in esse at the time of the testator's death, and the rule against perpetuities is in no way violated. In such a case the first taker has a fee defeasible on his death without issue surviving with an executory devise over: Eichelberger v. Barnitz, 9 Watts, 447; Ingersoll's App., 86 Pa. 240; Sheet's App., 52 Pa. 257; Cameron v. Coy, 165 Pa. 290; Nicholson v. Bettle, 57 Pa. 384; Caskey v. Brewer, 17 S. & R. 441; Covert v. Robinson, 46 Pa. 274.

*W. L. Lindsay*, with him *John S. Robb*, for appellee.—This case is governed by the rule laid down in a long line of cases:

Mickley's Appeal, 92 Pa. 517; Fitzwater's Appeal, 94 Pa. 141; Caldwell v. Skilton, 13 Pa. 152; Biddle's Estate, 28 Pa. 59; Stevenson v. Fox, 125 Pa. 568; Coles v. Ayres, 156 Pa. 197; Mitchell v. Pittsburg, etc., Ry. Co., 165 Pa. 645; Fahrney v. Holsinger, 65 Pa. 380; Eichelberger v. Barnitz, 9 Watts, 447.

Standing alone the words "die without issue," and other expressions of the same import, mean an indefinite failure of issue: Taylor v. Taylor, 63 Pa. 481; Middleswarth v. Blackmore, 74 Pa. 414; Reinoehl v. Shirk, 119 Pa. 108.

OPINION BY MR. JUSTICE MESTREZAT, January 7, 1901:

This was an action of assumpsit to recover the first payment of purchase money alleged to be due for certain real estate sold by the plaintiff to the defendant by articles of agreement dated October 31, 1899. The contract required " the deed and title to be marketable and free from all incumbrances." The single defense is that the "plaintiff has not now nor has he at any time had a marketable title free from all incumbrances." A rule for judgment for want of a sufficient affidavit of defense was made absolute and judgment entered against the defendant. This action of the court below is assigned for error.

Christian Stoner, the father of the plaintiff, was seized in fee simple of certain real estate in Allegheny county, and died testate on June 22, 1871. By his will probated July 8, 1871, he directed his real estate to be divided into four lots, and he devised to the plaintiff the land in controversy in the following language: "Lot No. 2 I give and devise to my son Frederick. He to pay to his mother during her natural life sixty dollars per annum . . . . and if the said Frederick die without issue, and his wife survives him, she shall have the use of the said lot No. 2 with the appurtenances during her natural life, and at her death the said property shall revert to all my surviving heirs." Lot No. 1 he devised to his wife for life and then absolutely to his daughter, Elizabeth. Lot No. 3 he devised absolutely to his daughter Catharine Swartzwelder and directed her to pay $500 in cash. Lot No. 4 he devised absolutely to his daughter Mary Mellon, out of which she was to pay her mother during her natural life $40.00 per annum. He bequeathed $2,000 to his daughter Barbara Stotler.

Mary Stoner, the wife of Christian Stoner the testator, sur-

vived her husband and died February 6, 1876. The annuity charged against the plaintiff in the testator's will was regularly paid to his mother by the plaintiff and was fully discharged at the date of her death. The plaintiff has had no issue.

The right of the plaintiff to recover depends upon whether under his father's will he took a fee simple estate in the premises in dispute. If he did, the learned court below was right in entering judgment against the defendant; if he did not take such an estate the action of the court was erroneous, and the judgment must be reversed.

Our first duty is to ascertain the intention of the testator which must be carried out, unless in so doing it contravenes some established rule of law.

It is undoubtedly true that by virtue of the act of 1833 the first sentence in the devise to Frederick Stoner gives him an estate in fee simple in the land in dispute. Had the testator added nothing to it beyond the description of the property, his son would have taken an indefeasible estate and held the devise by as complete and unassailable title as his sisters took the property devised to them by their father. But it is apparent that the testator did not intend that Frederick should hold his lot by a title unrestricted and clear of conditions. Had such been his intention it could and would have been manifested by using language in creating his estate in the premises similar to that employed in the devises to the daughters of the testator. The reason the testator had for making the distinction between his children is not entirely clear. His son was married when the will was written but had no children. The will is dated June 20, 1871, and was probated July 8, 1871. The testator doubtless anticipated the death of his son without children. In that event he desired at the death of his son and that of his wife, that the land devised to the former should be enjoyed by his other children. With this in view and for this purpose he placed the restriction on the devise to his son. It was clearly the testator's intention that if his son had issue at the latter's death his title should be indefeasible.

But when did the testator contemplate that such an event would occur? In a definite or indefinite period? Before or after his own demise? The language of the will furnishes a solution of the question. The testator says that "if the said

Frederick die without issue, and his wife survives him, she shall have the use of said lot No. 2 with the appurtenances during her natural life, and at her death, the said property shall revert to all my surviving heirs." It must be conceded that under the well settled rules of construction, if the fee given Frederick in the first instance had been followed by the direction that if he died without issue then over to another in fee, that the limitation over would have depended on an indefinite failure of issue and that Frederick would have taken an estate tail. This was so held in Eichelberger v. Barnitz, 9 Watts, 447, which is the leading case on the subject in this state, and the doctrine there enunciated has been followed by this court ever since. But that case lays down with equal authority exceptions to the rule which have, like the rule itself, stood unimpeached as the law of the state since the date of the decision. These exceptions are in the language of Mr. Justice Sergeant, who delivered the opinion, " either in cases of personal estate, in which the construction is more liberal in favor of executory devises; or when the time at which the devise over is to take effect, is expressly or impliedly limited to a particular period, within a life or lives in being, and twenty-one years after; as where the contingency is if the first taker die without issue before arriving at twenty-one or if he die unmarried and without issue, or if he die without leaving issue behind him, or living at the time of his decease, or if the devise over be of a life estate, which implies necessarily that such devisee over may outlive the first estate." In all these cases, says the court, the testator has been considered as meaning the failure of issue within a fixed period, and not an indefinite failure of issue. In Hill v. Hill, 74 Pa. 176, after stating the rule that a devise in fee with a limitation over upon the death of the first taker, leaving no issue, reduces the estate in fee to an estate tail, Mr. Justice Sharswood says: " On the other hand it is equally clear that if there is anything in the will which indicates an intention of the testator that this word ' issue ' shall not mean ' issue definitely' but children, then this construction does not apply. The rule has been well expressed by Mr. Smith in his valuable essay on Executory Interests, 584: ' When the limitation over is to take effect not on an indefinite failure of issue of the prior taker, but on a failure of children only, or on a fail-

ure of issue within a given time; then the limitation over will not raise an estate tail by implication in the prior taker, but he will have a life estate with a limitation over of a springing interest or a fee with a conditional limitation over as the case may be.'"

In Christian Stoner's will the first ulterior devise in default of issue is the life estate to Frederick's wife who was in esse. As is said by Justice SERGEANT in Eichelberger v. Barnitz, supra, this implies necessarily that the devisee over may outlive the first estate. The reason the testator in such cases contemplates a definite failure of issue is stated by Mr. Smith (Executory Interests, 559) to be "because it is not likely in such case that the testator was contemplating an indefinite failure of issue as that might, and most probably would not happen until many years after the death of the object of the ulterior limitation." After the life estate given to Mrs. Frederick Stoner the fee goes to all the testator's "surviving heirs." "It has often been held," says Mr. Justice STRONG in Bedford's App., 40 Pa. 23, "that a limitation over by will to survivors or persons in being, after the death of the first taker without issue, raises a strong presumption that the testator did not contemplate an indefinite failure of issue: Johnson v. Currin, 10 Pa. 498; Moffat v. Strong, 10 Johnson, 16; Ranelagh v. Ranelegh, 2 Mylne & Keen, 441." In Taylor v. Taylor, 63 Pa. 485, it is said by SHARSWOOD, J., speaking for the court: "The nature of the devise over has always been looked at to ascertain whether a definite or an indefinite failure of issue was intended, as where the ulterior devises confer estates for life only, or when they are only to take effect in case the devisee then be living: Pells v. Brown, Cro. Jac. 590; Roe dem. Sheers v. Jeffery, 7 Term Rep. 589."

In the case in hand the first limitation over being to Frederick's wife for life, it is clear that the testator contemplated a failure of issue before her death. Otherwise she would not have been entitled to and could not have enjoyed the estate devised to her. An indefinite failure of issue would have invalidated the devise to Frederick's wife by carrying the estate given her far beyond her death, and of course such could not have been the intention of the testator. We therefore think that the correct interpretation of the language of the will ren-

ders it certain that in the devise to his son the testator intended a limitation over after a definite failure of issue.

Did the testator contemplate that his son's death would occur prior to his own death, and was the limitation over made with that contemplation in view? It is said that by an established rule of construction a devise over in the event of death, when the first devisee is to take immediately, is construed to mean death in the lifetime of the testator. Mr. Powell (Pow. Dev. 763) says: "But in cases of immediate gifts it is generally true that a bequest over in the event of the death of the preceding legatee refers to that event occurring in the lifetime of the testator; yet this construction is only made ex necessitate rei from the absence of any other period to which the words may be referred, as a testator is not supposed to contemplate the event of himself surviving the objects of his bounty." But in Jessup v. Smuck, 16 Pa. 327, it is said that the rule is not of uniform application, and may be controlled by collateral events connected with the death. In the same case Mr. Justice CHAMBERS says (p. 341): "In the cases which limit the death to the testator's lifetime, it is admitted that it is adopted from necessity, in aid of what was considered the general intent of the testator, and was not applied where the first taker is referred to or treated as living at a period subsequent to the death of the testator." The devise to Frederick itself shows that the testator anticipated his son surviving him, and that " the testator was providing for the disposition of his estate after his decease, and must be supposed to refer to events, and their occurrence in time subsequent to his death:" Jessup v. Smuck, supra. The devise to Frederick Stoner is coupled with a direction that the devisee shall pay $60.00 per annum to his mother, who was then living, during her natural life. The testator evidently expected his wife to survive him, because in the event she did not, the granting of the annuity to her would have been useless. He therefore anticipated the payment of the annuity to his wife at the only time when it could be paid, to wit: after his death. This fact we think conclusively shows that the testator contemplated that his son would survive him, and that the event of his dying without issue would occur after the death of the testator.

It seldom occurs that the language employed in two wills is

identical, and hence it is difficult to find one case that establishes a precedent for the decision of another. But in effect we think the language used by the testator in Hoover v. Krick, 1 Walker, 117, is the same as that used in the will of Christian Stoner in the devise to his son. The devise in the case referred to is as follows : " I give and devise to my two sons John and George and to their heirs and assigns all my plantation and tract of land in Cumru township, Berks county, containing one hundred and seventy acres, be the same more or less under and subject to the payment of the respective legacies herein bequeathed. To have and to hold the said real estate to said John and George Krick, their heirs and assigns ; provided, however, always nevertheless, that in case my son John should die without lawful issue, then and in such case the said share of said real estate herein given shall revert to my son George, from and after the decease of the wife of my son John, if she shall outlive her husband—hereby allowing and declaring it to be my meaning in case the said wife of my son John shall outlive him, that in such case she shall receive and enjoy the rents, issues and profits of the said John's estate during her natural life." It will be observed that an estate in fee is given to the two sons, then if John should die without issue a life estate in his share of the real estate is given to his wife ; then his share goes to his brother George. John died without issue. It was contended that he took an estate tail under the provisions of his father's will. The court below, however, held that the devise over of a life estate showed that the testator meant that the estate should go over on a failure of issue within a fixed period, and not on an indefinite failure of issue, and that upon the death of John without issue and the death of his wife, the estate went to George's children. The judgment was affirmed on the opinion of the court below. The learned judge of the court below in his opinion used, inter alia, the following language, which may be appropriately applied to the case in hand : " The devise is to John and George, their heirs and assigns. These words clearly carry a fee, and if not followed by others the case would be free from difficulty. . . . Although a fee may be given in a former part of a will it may be restrained by subsequent words so as to convert it into an inferior interest. A less estate is

more frequently given in this mode than in any other. What effect has the proviso added to the devise? George's rights are in no way diminished, but it is evident that a limitation of some kind was intended in regard to John's. The plaintiffs are children of George, and the probability is, although not mentioned in the case stated, that as John died without issue, he had no children at the time the will was made. It is apparent from the will that John and George were favored by their father, and John having no children, the testator did not wish his estate to go into the hands of strangers. There was no want of affection for John and his wife. It is specifically provided that, if John died first, his wife should have the use of his entire estate for her life. What are we to understand was the intention of the testator? Clearly, that if John had no children at his death and that of his wife, his share should go to his brother George."

The views we have expressed lead us to the conclusion that by the will of his father, Frederick Stoner took an estate in fee in the premises in dispute, determinable on his death without issue, in which event the ulterior estates would take effect as executory devises.

It follows from what has been said that the plaintiff, not being in a position to convey to the defendant a title to the premises in dispute, "marketable and free from all incumbrances," he was not entitled to judgment for want of a sufficient affidavit of defense.

The judgment of the court below is reversed and a procedendo awarded.