## Reynolds' Estate

*J. W. Nelson*, for petitioner.

*J. A. Stranahan, Jr.*, for respondent.

ROWLEY, P. J., January 17, 1941.—This is a proceeding to enforce payment of legacies from real estate of testator.

Robert Reynolds died testate on September 26, 1927. The pertinent portion of his will reads:

"To my wife Mary Adelia Reynolds I bequeath all my property both real and personal. At my decease should there be sufficient for my wife's support the balance of her life and to spare I then order to be paid to my sister Mary Reynolds $100. . . ."

Then follow bequests of $100 to each of six brothers and sisters, and bequests of $50 to each of two nieces. Petitioners herein are the brothers and sisters and nieces named as legatees. Respondent is testator's stepdaughter.

At his death testator owned 80 acres in Deer Creek Township, which land petitioners now seek to charge for payment of their legacies. This real estate was appraised for inheritance tax at $1,800, and his personalty was appraised at $200. His widow Mary Adelia claimed deductions including a widow's exemption of $500, and paid inheritance tax upon a net estate of $1,076.

Mary Adelia Reynolds, testator's widow, died February 29, 1936, intestate, leaving a daughter Charlotte McCollum as her sole heir and next of kin. Charlotte McCollum now claims the 80 acres in Deer Creek, devised by testator to his widow Mary Adelia, discharged of the aforementioned legacies.

The real estate was intact at the death of the widow.

Section 17 of the Wills Act of June 7, 1917, P. L. 403, 20 PS §241, provides:

"All pecuniary legacies contained in any will shall be charged upon, and payable out of, any real estate not specifically devised, where the personal estate is insufficient for their payment, or where the personal estate, though originally sufficient, has been wasted . . . unless a contrary intention shall appear by the will." See Strahley's Estate, 314 Pa. 515, 516.

The personalty of the instant estate was insufficient to pay the legacies. Respondent does not contend that the real estate was specifically devised.

Respondent's position is that the devise to the widow created a fee simple estate which cannot be cut down by a subsequent provision of the will.

Perhaps it may be said that such a principle of law has been frequently adopted and applied, but it is by no means an absolute rule. In Buechley's Estate, 283 Pa. 107, 109, Mr. Justice Kephart said:

"Where there is a gift of an entire estate by clear and explicit language, the presumption is that the gift is absolute, and subsequent clauses to reduce it must do so by language which is equally clear and explicit, having the undoubted effect of causing such diminution . . ."

In Byrne's Estate, 320 Pa. 513, 516, the foregoing was quoted with this addition:

"On the other hand, 'we have probably as often held that, in finding the controlling intention, all the words used by the testator should be taken into account, and, if the intent to restrict the gift is clear, it must be given effect.' Wettengel's Est. 278 Pa. 571, 573."

The whole question of diminishing an estate by a subsequent clause is considered at length in Byrne's Estate, supra, where the authorities are collected.

We do not regard this question as the point involved in the instant case. In our opinion charging the legacies upon the land would not have the effect of reducing the widow's title below a fee.

The question here is: Was there sufficient estate of the testator to support his widow during the balance of her life and "to spare"?

The point as stated by counsel for respondent is "that there was not sufficient personal property, and so forth, to maintain the widow during her lifetime, and that she used up or consumed the real estate."

The widow resided upon the real estate until her death, paying the taxes and making some repairs. At death her estate included the land and $392 in cash.

The cash was applied to payment of delinquent taxes, funeral expenses, and some smaller items. Respondent paid an inheritance tax on the real estate appraised at a net value of $1,500.

In Byrne's Estate, supra, a will which provided in one paragraph for the gift of the residue of testatrix estate to her sister absolutely, and, in the paragraph immediately following, should any part of her estate

remain upon her sister's death, provided for a gift of the same to her niece, was construed upon a consideration of the whole will to limit the estate to the sister with power of consumption, and remainder over to the niece.

We quote from Byrne's Estate, supra, p. 522:

"The effort always is to determine the intention of the testator, and, unless public policy forbids it, to enforce that intention, so that in death his property may be faithfully disposed of according to his will. . . . If the intention of the testator is to be given effect, as it must be, courts must be permitted, considering each case separately, to hold ineffective words of restriction and to enforce an absolute estate, where such an estate was intended, or, conversely, to disregard words of absolute gift and to declare the estate created to be a limited estate where a clear intention to that effect appears."

There was little testimony as to the widow's income from the farm or the details of her support.

It is clear enough that the real estate was intact at the widow's death. This indicates to us that testator's estate was sufficient to support his widow for life "and to spare". The conclusion is therefore inevitable that the legacies are charged upon the land.

But respondent says, if the legacies are chargeable against the land, payment thereof should be made only after appropriate deductions on account of debts of testator which were paid by Mary Adelia Reynolds' executrix, viz, debts and funeral expenses paid at testator's death $454.95, plus the widow's expenditures for taxes, newspapers, physician, etc., during the balance of her life, a total of $529.62, plus the amount paid by Charlotte McCollum for local taxes upon the land, funeral expenses of widow, and inheritance tax upon the land in question, a total of $449.42.

Undoubtedly the widow was entitled to charge the estate of her husband with his funeral expenses and

other debts. Whether she did so can only be conjectured at this date. The only evidence as to testator's estate and its liabilities is such as may be gleaned from the inheritance tax record. Likewise the widow had authority to consume or incumber the land for her support. At her death her creditors, if any, could have claimed payment out of the real estate.

It appears, however, that the widow made no claim to reimbursement from her husband's estate, nor has any creditor of the widow claimed against her estate.

There is no justification in the evidence for an inference that the widow paid testator's debts with her own funds, nor that the amounts expended by the widow for her support were not received from her husband's estate. Furthermore, payment made by respondent for funeral expenses was admittedly from the widow's estate. We are unable to state that this fund was distinct from the property bequeathed by her husband.

In this proceeding and under these circumstances, we are without authority to state an administration account for the estates of the testator and his widow.

It would seem, nevertheless, that respondent has paid an inheritance tax upon the entire value of the land. A sense of fairness may induce the interested parties to equitably adjust this matter.

It is our considered judgment that the following legacies,

| | |
|---|---|
| "To my sister Mary Reynolds | $100 |
| To my sister Sadie Hoyt | 100 |
| To my sister Mrs. Albert Thompson | 100 |
| To my sister Hattie Reynolds | 100 |
| To my brother Albert Lewis Reynolds | 100 |
| To my brother Harry Reynolds | 100 |
| To my niece Jessie Reynolds | 50 |
| To my niece Carry Irwin | 50" |

are charged upon and payable from the real estate.

*Decree*

And now, January 17, 1941, it is, therefore, ordered, adjudged, and decreed that, within a period of six months from this date, Charlotte McCollum pay the following legacies:

To Mary Reynolds, Sadie Hoyt, Mrs. Albert Thompson, Hattie Reynolds, Albert Lewis Reynolds, and Harry Reynolds $100 each; and to Jessie Reynolds and Carry Irwin, $50 each; provided that, if the said Charlotte McCollum shall fail to make payment within such period, an order for the sale of said land shall be entered by the court.